UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA MORALES ORTIZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. CV 07-5894-RC<br><br>OPINION AND ORDER |

Plaintiff Leticia Morales Ortiz filed a complaint on September 13, 2007, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on January 28, 2008, and the parties filed a joint stipulation on February 26, 2008.

**BACKGROUND**

**I**

On June 20, 2005, plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since August 1, 2003, due to arthritis, fibromyalgia, constant pain and depression. Certified Administrative Record ("A.R.") 13, 42, 45, 280. The plaintiff's application was

initially denied on December 2, 2005, and was denied again on April 6, 2006, following reconsideration.  A.R. 30-40.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Sally C. Reason ("the ALJ") on September 13, 2006.  A.R. 24, 278-99.  On December 22, 2006, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 10-17.  The plaintiff appealed the decision to the Appeals Council, which denied review on August 9, 2007.  A.R. 3-9.

## II

The plaintiff, who was born on September 16, 1960, is currently 48 years old.  A.R. 64.  She has a tenth-grade education and previously worked as an assembly worker, cook's helper, and packer. A.R. 42-43, 46, 71-87.

Since at least September 4, 2003, plaintiff has received medical care at Kaiser Permanente from several physicians, including William McCord, M.D., a rheumatologist, and A. Saleh, M.D., an internist.[1] A.R. 90-249.  On September 4, 2003, Dr. Saleh prescribed Ativan[2] to plaintiff for panic attacks, A.R. 132, and on April 22, 2005, Dr. McCord prescribed Trazodone[3] to plaintiff for depression.  A.R. 161.

---

[1] Although plaintiff has both mental and physical complaints, this opinion addresses only plaintiff's mental complaints.

[2] Ativan, also called Lorazepam, "is used in the treatment of anxiety disorders and for short-term . . . relief of the symptoms of anxiety."  The PDR Family Guide to Prescription Drugs, 60, 375 (8th ed. 2000).

[3] Trazodone, also called Desyrel, "is prescribed for the treatment of depression."  The PDR Family Guide to Prescription

However, on October 5, 2005, Dr. McCord discontinued plaintiff's use of Trazodone and instead prescribed Prozac[4] and Elavil[5] to plaintiff for depression.  A.R. 103, 117, 131.

On September 12, 2006, Martha Masson, Ph.D., a clinical psychologist, examined plaintiff, conducted psychological testing, and diagnosed plaintiff with an unspecified depressive disorder, with anxiety features and psychological factors affecting medical condition, and determined plaintiff's Global Assessment of Functioning ("GAF") was 50-55.[6]  A.R. 269-77.  Dr. Masson opined plaintiff experiences: poor memory; appetite disturbance with weight change; sleep disturbance; personality change; mood disturbance; emotional lability; anhedonia or pervasive loss of interest; psychomotor agitation or retardation; feelings of guilt/worthlessness; difficulty thinking or concentrating; social withdrawal or isolation; decreased

---

Drugs at 198, 690.

[4]  "Prozac is prescribed for the treatment of [major] depression — that is, a continuing depression that interferes with daily functioning."  The PDR Family Guide to Prescription Drugs at 554.

[5]  Elavil, also called amitriptyline, "is prescribed for the relief of symptoms of mental depression."  Id. at 34, 240.

[6]  A GAF of 50 means the individual exhibits "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).  A GAF of 51-55 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id.

energy; generalized persistent anxiety; and hostility and irritability. A.R. 270. Dr. Masson noted plaintiff has a depressed mood, crying episodes 2-3 times a week, decreased concentration and memory, insomnia, generalized musculoskeletal pain, irritability, social withdrawal, fatigue, and recurrent thoughts of hopelessness and cutting herself with a knife, and she avoids using knives due to her thoughts, yet plaintiff denies suicidal ideation/intent. A.R. 270-71. Dr. Masson opined plaintiff is "moderately" limited in her ability to: remember locations and work-like procedures; understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary work routine without supervision; work in coordination with, or proximity to, others without being distracted by them; complete a normal workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently; and "mildly" limited in her ability to understand, remember and carry out simple one- or two-step instructions; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and be aware of normal hazards and take appropriate precautions. A.R.

4

272-73.  Dr. Masson further indicated plaintiff experiences episodes of decompensation in work-like situations because she is depressed, irritable, and excessively anxious, which can exacerbate her musculoskeletal pain.  A.R. 274.  Dr. Masson opined plaintiff is capable of low stress work, she is clinically depressed due to her ongoing medical condition, and her condition seriously impacts her ability to concentrate or learn new material.  A.R. 274-75.  Dr. Masson concluded plaintiff would miss more than three days of work a month due to her condition, and opined plaintiff's clinical depression remains unstable despite several years of psychotropic medications and her ongoing rheumatoid arthritis impacts her depression as she has difficulty remembering and focusing attention.  A.R. 276.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1172 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  "The claimant bears the burden

of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. Maier v. Comm'r of the Soc. Sec.

6

Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 404.1520a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 404.1520a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 404.1520a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3)]." 20 C.F.R. § 404.1520a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since her alleged onset date, August 1, 2003. (Step One). The ALJ then found plaintiff has rheumatoid arthritis and fibromyalgia, which are severe impairments; however, she does not have a severe mental impairment (Step Two) and does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff can perform her past relevant work as a

production assembler; therefore, she is not disabled. (Step Four).

**IV**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). Including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying benefits to claimants who meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding,

8

carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. If a claimant meets her burden of demonstrating she suffers from an impairment affecting her ability to perform basic work activities, "the ALJ *must* find that the impairment is 'severe' and move to the next step in the SSA's five-step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (emphasis in original); Webb, 433 F.3d at 686.

Here, the ALJ found plaintiff "does not have any severe mental disabilities" because she "has, at most, only a slight impairment which medical evidence establishes as having no more than a minimal effect, if any, on her ability to perform basic work activities." A.R. 15. In reaching this Step Two determination, the ALJ found plaintiff's "diagnosed mental impairments have only caused the following limitations: mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and no episodes of deterioration or decompensation." Id. However, plaintiff contends the ALJ's Step Two determination is not supported by substantial evidence because the ALJ improperly rejected the opinions of Dr. Masson, the only health care provider to offer an opinion regarding plaintiff's mental limitations. The plaintiff is correct.

As set forth above, Dr. Masson diagnosed plaintiff with an unspecified depressive disorder, with anxiety features and

9

psychological factors affecting medical condition, determined plaintiff's GAF was 50-55, and opined plaintiff had numerous "moderate" limitations in her mental abilities, including her abilities to respond appropriately to co-workers, supervisors and ordinary work situations, and to use judgment -- all of which are basic work activities.

The ALJ "must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician[,]" Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008). Here, the ALJ rejected Dr. Masson's opinions, giving them "little weight" because Dr. Mason "apparently ha[d] seen the [plaintiff] for a one time only evaluation with no indication that she would continue to treat the [plaintiff]" and because Dr. Masson's "one[-]time evaluation was performed for the sole purposes [sic] to furthering her disability case."[7]  A.R. 15.  However, these are not clear and convincing reasons for rejecting Dr. Masson's uncontradicted opinions. Rather, the ALJ's disparagement of Dr. Masson's opinions on

---

[7] Given the ALJ's rationale, it is ironic that the ALJ reached the opposite conclusion in assessing plaintiff's physical impairments, crediting the opinions of an examining physician and a nonexamining physician over the opinions of plaintiff's treating physician. See A.R. 14-16.

1  the ground she did not treat plaintiff "ignores the well-established
2  distinction between an examining and a treating doctor.  Like the
3  doctor[] who examined [plaintiff] at the Commissioner's request, Dr.
4  [Masson] was neither asked, nor paid, to provide treatment for
5  [plaintiff], but rather to give an objective opinion about [her]
6  medical condition."  Regennitter, 166 F.3d at 1299.  Moreover, the ALJ
7  pointed to no evidence of any impropriety in Dr. Masson's report, and
8  "in the absence of other evidence to undermine the credibility of a
9  medical report, the purpose for which the report was obtained does not
10 provide a legitimate basis for rejecting it."  Reddick v. Chater, 157
11 F.3d 715, 726 (9th Cir. 1998); Lester, 81 F.3d at 832.

13     The ALJ also rejected Dr. Masson's opinions on the ground
14 plaintiff was prescribed psychiatric medications by Drs. Saleh and
15 McCord, who are not mental health practitioners, and "[t]here is no
16 indication that the [plaintiff] ever sought counseling, therapy, or
17 other psychiatric or psychological care prior to application for
18 benefits."  A.R. 15.  However, these also are not clear and convincing
19 reasons for rejecting Dr. Masson's opinions since Drs. Saleh and
20 McCord are competent under California law to prescribe psychiatric
21 medication, see, e.g., Lester, 81 F.3d at 833 (9th Cir. 1995) ("Dr.
22 Kho provided treatment for the claimant's psychiatric impairment,
23 including the prescription of psychotropic medication.  His opinion
24 constitutes 'competent psychiatric evidence' and may not be
25 discredited on the ground that he is not a board certified
26 psychiatrist."), and because "mental illness is notoriously
27 underreported and because 'it is a questionable practice to chastise
28 one with a mental impairment for the exercise of poor judgment in

11

seeking rehabilitation.'"  Regennitter, 166 F.3d at 1299-1300 (citations omitted); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness.  Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [the psychologist's] assessment of claimant's condition is inaccurate."  (citation omitted)).

    Because the ALJ failed to provide adequate reasons for rejecting Dr. Masson's opinions, this Court credits them as a matter of law. Widmark, 454 F.3d at 1069; Edlund, 253 F.3d at 1160.  Here, properly crediting Dr. Masson's opinions, it is clear plaintiff has a severe mental impairment.  Edlund, 253 F.3d at 1159-60; see also Samuel v. Barnhart, 295 F. Supp. 2d 926, 952 (E.D. Wis. 2003) ("[P]laintiff had a severe impairment" when examining physicians determined plaintiff's GAF to be 51-60, which "meant that plaintiff's symptoms were moderate, and that he would have moderate difficulty in social, occupational or school functioning." (citation omitted)); Bennett v. Barnhart, 264 F. Supp. 2d 238, 255 (W.D. Pa. 2003) ("[A] GAF score of 55 to 60 suggests . . . a mental impairment that is 'severe' in nature.").  In light of plaintiff's severe mental impairment, and the ALJ's failure to consider the effect of plaintiff's severe mental impairment on plaintiff's ability to perform her past relevant work, the ALJ's Step Four determination that plaintiff can perform her past relevant work as a production assembler is not supported by substantial evidence.

1 | Vasquez v. Astrue, __ F.3d __, 2008 WL 4791860, *7-8 (9th Cir.
2 | (Cal.)); Edlund, 253 F.3d at 1160.
3 |
4 | V
5 | When the Commissioner does not apply the proper legal standards,
6 | the Court has authority to affirm, modify, or reverse the
7 | Commissioner's decision "with or without remanding the cause for
8 | rehearing." 42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072,
9 | 1076 (9th Cir. 2002). "Generally when a court . . . reverses an
10 | administrative determination, 'the proper course, except in rare
11 | circumstances, is to remand to the agency for additional investigation
12 | or explanation.'" Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir.
13 | 2004) (citations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th
14 | Cir. 2004). In this case, remand is warranted so the ALJ can assess
15 | the effect of plaintiff's severe mental impairment on plaintiff's
16 | ability to work.[8] Webb, 433 F.3d at 688; Bustamante v. Massanari, 262
17 | F.3d 949, 956 (9th Cir. 2001).
18 |
19 | **ORDER**
20 | IT IS ORDERED that: (1) plaintiff's request for relief is
21 | granted; and (2) the Commissioner's decision is reversed, and the
22 | action is remanded to the Social Security Administration for further
23 | proceedings consistent with this Opinion and Order, pursuant to
24 | //

---

[8] Because this Court concludes the ALJ erred in Step Two of the sequential analysis, it need not reach the other claims plaintiff raises, none of which would afford plaintiff greater relief than herein granted. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

DATE: _____        _____
                                              ROSALYN M. CHAPMAN
                                       UNITED STATES MAGISTRATE JUDGE

R&R-MDO\07-5894.mdo
11/25/08